DR:ML/BW
F. #2022R00580

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - -X

UNITED STATES OF AMERICA

      - against -                    Docket No. 23-CR-99 (DLI)

SHLOMO PATCHIAV,
      also known as "Slava Fatkhiev,"

               Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - -X

THE GOVERNMENT'S MEMORANDUM OF LAW IN OPPOSITION
TO THE DEFENDANT'S MOTIONS IN LIMINE

JOSEPH NOCELLA, JR.
UNITED STATES ATTORNEY
Eastern District of New York
271 Cadman Plaza East
Brooklyn, New York 11201

Megan Larkin
Benjamin Weintraub
Assistant U.S. Attorneys
    (Of Counsel)

Table of Contents

Preliminary Statement....................................................................................................... 1

Argument .......................................................................................................................... 1

    I.    Evidence Relating to the Victim's Disappearance, Murder, and Disposal and
        Recovery of His Body is Admissible ....................................................................... 1

        A.    Direct Evidence of the Charged Conspiracy................................................. 2

            1.    Evidence of the Defendant and CC-1's Relationship and the
                 Existence of the Conspiracy............................................................. 2

            2.    Evidence of Actions Taken in Furtherance of the Conspiracy ....... 3

            3.    Evidence that Threats and Force Were Actually Used and of the
                 Victim's Perception of Such Threats and Force ............................. 5

            4.    Evidence of the Defendant's Knowledge and Intent to Join the
                 Conspiracy ...................................................................................... 7

            5.    Inextricably Intertwined Evidence of the Charged Extortion
                 Conspiracy ...................................................................................... 9

            6.    Evidence of Consciousness of Guilt and Thus Guilt Itself .......... 10

        B.    Other Acts Evidence Under Federal Rule of Evidence 404(b)................. 11

        C.    Federal Rule of Evidence 403 .................................................................. 11

    II.    The Defendant's Remaining Arguments Are Meritless........................................ 17

Conclusion ..................................................................................................................... 19

Table of Authorities

CASES

United States v. Barlow,
    No. 09-CR-580 (JFB), 2010 WL 4878961 (E.D.N.Y. Nov. 23, 2010) .................................... 15

United States v. Barret,
    No. 10-CR-809 (KAM), 2011 WL 6704862 (E.D.N.Y. Dec. 21, 2011) ................................... 5

United States v. Batista,
    No. 06-CR-265 (DLI), 2009 WL 3134561 (E.D.N.Y. Sept. 23, 2009) .................................... 7

United States v. Bein,
    728 F.2d 107 (2d Cir. 1984) ..................................................................................................... 11

United States v. Blount,
    229 F.2d 669 (2d Cir. 1956) ....................................................................................................... 8

United States v. Carboni,
    204 F.3d 39 (2d Cir. 2000) .......................................................................................................... 9

United States v. Castro,
    411 F. App'x 415 (2d Cir. 2011) .............................................................................................. 16

United States v. Cenephat,
    115 F.4th 1359 (11th Cir. 2024) ............................................................................................... 15

United States v. Chin,
    83 F.3d 83 (4th Cir. 1996) ........................................................................................................ 17

United States v. Diaz,
    176 F.3d 52 (2d Cir. 1999) .......................................................................................................... 3

United States v. Fortenberry,
    971 F.2d 717 (11th Cir. 1992) .................................................................................................. 15

United States v. Germosen,
    139 F.3d 120 (2d Cir. 1998) ....................................................................................................... 8

United States v. Goffer,
    721 F.3d 113 (2d Cir. 2013) ....................................................................................................... 8

United States v. Gonzalez,
    110 F.3d 936 (2d Cir. 1997) ..................................................................................................... 14

United States v. Inserra,
    34 F.3d 83 (2d Cir. 1994) ......................................................................................................... 10

United States v. Jackson,
    47 F. App'x 36 (2d Cir. 2002) ................................................................... 15

United States v. Kelley,
    551 F.3d 171 (2d Cir. 2009) ...................................................................... 8

United States v. Kirk Tang Yuk,
    885 F.3d 57 (2d Cir. 2018) ........................................................................ 11

United States v. Lee,
    612 F.3d 170 (3d Cir. 2010) ...................................................................... 16

United States v. MacPherson,
    424 F.3d 183 (2d Cir. 2005) ...................................................................... 8

United States v. Mastropieri,
    685 F.2d 776 (2d Cir. 1982) ...................................................................... 11

United States v. Matera,
    489 F.3d 115 (2d Cir. 2007) ...................................................................... 16

United States v. Mathis,
    778 F. App'x 816 (11th Cir. 2019) ........................................................... 16

United States v. Mickens,
    926 F.2d 1323 (2d Cir. 1991) .................................................................... 10

United States v. Miller,
    116 F.3d 641 (2d Cir. 1997) ...................................................................... 16

United States v. Morillo-Vidal,
    547 F. App'x 29 (2d Cir. 2013) ................................................................. 3

United States v. Moten,
    564 F.2d 620 (2d Cir. 1977) ...................................................................... 3

United States v. Mundle,
    No. 15-CR-315 (NSR), 2016 WL 1071035 (S.D.N.Y. Mar. 17, 2016) ............................. 13, 14

United States v. Pascarella,
    84 F.3d 61 (2d Cir. 1996) .......................................................................... 2

United States v. Perez,
    387 F.3d 201 (2d Cir. 2004) ...................................................................... 10

United States v. Santos,
    541 F.3d 63 (2d Cir. 2008) ...................................................................... 4, 5, 7

United States v. Segui,
    No. 19-CR-188 (KAM), 2019 WL 8587291 (E.D.N.Y. Dec. 2, 2019) ......................... 8, 12, 13

United States v. Soto–Beníquez,
    356 F.3d 1 (1st Cir. 2003) ........................................................................................ 5

United States v. Sureff,
    15 F.3d 225 (2d Cir. 1994) ...................................................................................... 4

United States v. Thai,
    29 F.3d 785 (2d Cir. 1994) ...................................................................................... 4

United States v. Thristino,
    47 F. App'x 7 (2d Cir. 2002) ................................................................................. 16

United States v. Zhou,
    428 F.3d 361 (2d Cir. 2005) .................................................................................. 6, 7

## STATUTES

18 U.S.C. § 875(c) ........................................................................................................ 12, 13

18 U.S.C. § 924(c) ............................................................................................................. 13

## RULES

Fed. R. Evid. 403 ...................................................................................................... 12, 13, 15

Fed. R. Evid. 404(b) ......................................................................................................... 2, 11

Fed. R. Evid. 801(d)(2)(E) ................................................................................................... 18

Fed. R. Evid. 804(a)(5)(B) ................................................................................................... 18

<u>PRELIMINARY STATEMENT</u>

The government respectfully submits this memorandum of law in opposition to the defendant's motions <u>in</u> <u>limine</u>.  ECF No. 95 ("Def. Mot.").  The defendant seeks (1) "to preclude the Government from revealing" that the victim Shehroz Tokhirov ("Tokhirov" or the "Victim") "was murdered and any autopsy photos of the decedent's decomposed body" (<u>id.</u> at 2); (2) to "reserve his rights to challenge any attempt to enter into evidence anything obtained from [the d]efendant's cell phone based upon the suppression of the cell phone . . . including but not limited to cell tower evidence" and messages (<u>id.</u>); and (3) a ruling that the government must prove the existence of the conspiracy before introducing statements of the defendant's co-conspirator, Sanat Djumayev ("Djumayev" or "CC-1"), and be precluded from introducing CC-1's statements to law enforcement in 2024 (<u>id.</u> at 2-3).  For the reasons set forth herein, the defendant's motions <u>in</u> <u>limine</u> should be denied.[1]

<u>ARGUMENT</u>

I.     <u>Evidence Relating to the Victim's Disappearance, Murder, and Disposal and Recovery of His Body is Admissible</u>

The defendant's motion to preclude evidence that the Victim was murdered, Def. Mot. at 2, should be denied.[2]  In the government's opening motions <u>in</u> <u>limine</u>, <u>see</u> ECF No. 96 ("Opening Brief" or "Gov. Mot."), the government moved to introduce evidence relating to, among other things: (1) the Victim's disappearance on June 25, 2022, (2) steps taken by the defendant and CC-1 to cover up the Victim's murder and dispose of his body, and (3) the recovery of the Victim's remains and other evidence from the vicinity of a residence in

---

[1]     The government will not seek to introduce CC-1's statements made to law enforcement in April and June 2024.

[2]     The defendant's motion to preclude autopsy photographs should also be denied for the reasons stated in the government's Opening Brief at 19-20.

Ellenville, New York (the "Ellenville Residence").  See Gov. Mot. at 2-7, 11-16.  The

government submitted that this evidence is admissible as direct evidence of the charged extortion

conspiracy and, independently, under Federal Rule of Evidence 404(b)(2) as evidence of the

defendant's planning and preparation, knowledge and intent, and absence of mistake or accident.

See Gov. Mot. at 9-19.  The government incorporates its Opening Motion, including the facts,

applicable law and legal arguments herein and, though the defendant has provided no rationale or

legal argument to support his motion to preclude, responds to the defendant's argument here.

   A.  <u>Direct Evidence of the Charged Conspiracy</u>

        Evidence relating to the Victim's disappearance, murder, and disposal and

recovery of his body is admissible as direct evidence for the following reasons, among others:

(1) it is evidence of the relationship between the defendant and CC-1 and the existence of the

conspiracy between them; (2) it is evidence of actions taken in furtherance of the conspiracy;

(3) it is evidence that the threats and force alleged in the Indictment were actually made and

used, and evidence of the Victim's perception of those threats and force; (4) it is evidence of the

defendant's knowledge of the conspiracy and his intent to join in the conspiracy; (5) it is an

inextricably intertwined part of the story of the charged extortion conspiracy; and (6) it is

evidence of consciousness of guilt and thus guilt itself.

      1.  <u>Evidence of the Defendant and CC-1's Relationship and the Existence of the
Conspiracy</u>

        First, evidence of the Victim's disappearance, murder, and disposal and recovery

of his body is admissible to establish the relationship between the defendant and CC-1, along

with the existence of the conspiracy.  Courts in this Circuit have found that relationship of trust

evidence may constitute direct proof of a charged conspiracy.  See, <u>e.g.</u>, <u>United States v.

Pascarella</u>, 84 F.3d 61, 73 (2d Cir. 1996) (direct evidence may include that which shows "the

2

development of a relationship of trust between the participants" in a crime); United States v. Moten, 564 F.2d 620, 628 (2d Cir. 1977) ("[P]roof of prior drug dealing by individual defendants with Brown at a time previous to commencement of the conspiracy charged was clearly admissible [against all the defendants] to show the basis for the existence of the conspiracy charged and the mutual trust which existed between Brown and his customers."); United States v. Morillo-Vidal, 547 F. App'x 29, 30-31 (2d Cir. 2013) (testimony regarding other crimes was admissible because it "explained [a co-conspirator's] relationship to his co-conspirator," which was "highly probative when the charged conduct covers a conspiracy"). Here, the government intends to establish that the defendant and CC-1 took steps in concert to dispose of the Victim's body the day after he disappeared. That the defendant and CC-1 worked together to accomplish the grisly task of disposing of the Victim's body is probative of the trust that existed between them and that they together conspired to extort the same Victim whose body they disposed of together. Accordingly, the evidence of their joint disposal of the Victim's body is admissible as direct evidence, insofar as it helps establish the relationship of trust between the defendant and CC-1.

### 2. Evidence of Actions Taken in Furtherance of the Conspiracy

Second, evidence relating to the Victim's disappearance, murder, and disposal and recovery of his body is also admissible because such actions were taken in furtherance of the conspiracy, and are thus evidence of the conspiracy itself. It is well settled in the Second Circuit that where an indictment, as in this case, contains a conspiracy charge, "[a]n act that is alleged to have been done in furtherance of the alleged conspiracy" is considered "part of the very act charged." United States v. Diaz, 176 F.3d 52, 79 (2d Cir. 1999). Where "the indictment contains a conspiracy charge, uncharged acts may be admissible as direct evidence of the

conspiracy itself." United States v. Thai, 29 F.3d 785, 812 (2d Cir. 1994). The government "may offer proof of acts not included within the indictment[] as long as they are within the scope of the conspiracy." Id. (citation omitted). Here, the conspiracy to use actual or threatened force to induce the Victim to provide the defendant and CC-1 with money and a car is inclusive of the defendant and his co-conspirators' possession of the extorted money and car, as well as their efforts to conceal the violence used in furtherance of their extortionate scheme. The conspiracy did not end when CC-1 received money and the notarized document from the Victim on the morning of the Victim's disappearance. Rather, the defendant and CC-1's actions related to the Victim's disappearance, murder and disposal of the Victim's body were taken in furtherance of the conspiracy to not only ensure that they would be able to retain the money they had extorted from the Victim, but to do so without being detected. As such, these actions were taken in furtherance of the charged conspiracy and evidence of this conduct is admissible on that basis.

Notably, courts have held that evidence of violent conduct taken in furtherance of a conspiracy can constitute evidence of the conspiracy itself. In the narcotics trafficking context, the Second Circuit has recognized that "[b]ecause narcotics conspiracies are illicit ventures, disputes are frequently settled by force or the threat of force." United States v. Santos, 541 F.3d 63, 72 (2d Cir. 2008); see also United States v. Sureff, 15 F.3d 225, 228-29 (2d Cir. 1994) (noting that "drug trafficking is often attended by violence"). Moreover, violence "used to collect [narcotics trafficking] debts directly" or to "send[] the message that those suspected of stealing from the conspiracy would be treated harshly" constitutes conduct taken in furtherance of the narcotics trafficking conspiracy. Santos, 541 F.3d at 72. Applying this principle, the court in United States v. Barret permitted the introduction of evidence of attempted murder and murder-for-hire in a case charging narcotics distribution conspiracy, Section 924(c), and

4

engaging in a continuing criminal enterprise.  See United States v. Barret, No. 10-CR-809 (KAM), 2011 WL 6704862, at *5 (E.D.N.Y. Dec. 21, 2011), aff'd, 677 F. App'x 21 (2d Cir. 2017).  The court noted that "[a]cts of violence are frequently deemed to have been performed as overt acts in furtherance of, and thus are direct evidence of, an alleged drug distribution conspiracy" and admitted evidence of the uncharged acts of attempted murder and murder-for-hire on the basis that they were "overt acts performed in furtherance of the conspiracy because each arose out of a drug trafficking-related dispute or was otherwise motivated by a desire to protect or enhance the conspiracy."  Id. at *5, 9; see also United States v. Soto–Beníquez, 356 F.3d 1, 18 (1st Cir. 2003) (admitting evidence of murders committed by members of narcotics conspiracy in prosecution for narcotics distribution conspiracy and engaging in a continuing criminal enterprise).

Just as narcotic trafficking conspiracies are "illicit ventures" in which "disputes are frequently settled by force or the threat of force," Santos, 541 F.3d at 72, so too are Hobbs Act extortion conspiracies, which are illicit conspiracies that by their very nature involve the threat of or actual use of force.  Accordingly, by the same logic that courts routinely admit evidence of violence in narcotics trafficking cases on the basis that such violence constitutes conduct taken in furtherance of the conspiracy, the court should admit evidence relating to the acts of violence taken against the Victim on the basis that such violence constituted an overt act taken in furtherance of the charged extortion conspiracy and is therefore direct evidence of the conspiracy.

### 3.  Evidence that Threats and Force Were Actually Used and of the Victim's Perception of Such Threats and Force

Third, evidence that the Victim disappeared the same day he paid CC-1 a portion of his debt and was subsequently found murdered is circumstantial evidence that the defendant

and CC-1 actually threatened the Victim, which is an element of the charged extortion conspiracy. The government intends to establish at trial that, prior to the Victim's disappearance, the defendant threatened the Victim if he could not pay the full debt. The government further intends to establish that the Victim disappeared on June 25, 2022, after meeting with CC-1 earlier that day and paying CC-1 only a portion (but not all) of the debt owed. The evidence will show that when the Victim's body was recovered, the body was in clothing that matched the clothing the Victim was wearing when he met with CC-1 on the morning of June 25, 2022. Further, the evidence will show that the Victim's body was stuffed into duffle bags that were consistent in look and style with duffle bags that CC-1 purchased on the evening of June 25, 2022, after he had met with the Victim earlier that day. This evidence—which establishes that the Victim suffered extreme harm shortly after meeting with CC-1 and paying off only a portion of the debt owed—is probative of the government's allegation that, prior to the Victim's disappearance, the defendant and CC-1 threatened to harm the Victim if he was unable to pay the full debt.

This evidence is also probative of the Victim's state of mind and perception of the defendant's and CC-1's threats. The Second Circuit has established that a victim's state of mind is relevant to establishing the elements of extortion because extortion "encompass[es] situations in which a victim is given the option of relinquishing some property immediately or risking unlawful violence resulting in other losses, and he simply chooses what he perceives to be the lesser harm . . . . At bottom, undeniably, the victim of an extortion acts from fear, whether of violence or exposure." United States v. Zhou, 428 F.3d 361, 371 (2d Cir. 2005). Here, this evidence is admissible because it supports an inference that the Victim paid the defendant and CC-1 due to fear from their threats of force. It also supports an inference that those threats were

6

credible, which speaks both to the Victim's state of mind and the defendant's state of mind, as discussed above.

4.   Evidence of the Defendant's Knowledge and Intent to Join the Conspiracy

Fourth, evidence relating to the Victim's disappearance, murder, and disposal and recovery of his body is admissible to show that the defendant knowingly entered into the conspiracy.  As further set forth in the Opening Brief at 11-12, the elements of federal extortion conspiracy include "(i) an agreement to use actual or threatened force to obtain property with the consent of the victim and (ii) actions taken in affirmative furtherance of that agreement." Zhou, 428 F.3d at 370-71 (citations omitted).  As the Second Circuit stated in Zhou, actions taken in affirmative furtherance of an agreement to use force to obtain property with a victim's consent are "essential to a determination of conspiracy to commit extortion." Id.  Since affirmative actions are a means by which the jury can infer a defendant's knowledge and intent, the evidence relating to the defendant and CC-1's use of force against the Victim and disposal of the Victim's dead body is proof of affirmative acts taken in furtherance of the conspiracy and the defendant's knowing entrance into the conspiracy.

Moreover, courts have recognized that a defendant's use of uncharged violence or the commission of other bad conduct in support of a conspiracy is probative of the defendant's knowledge of and affirmative acts taken in furtherance of the conspiracy. See, e.g., Santos, 541 F.3d at 72 (evidence that defendant killed victim who stole from the conspiracy was sufficient to establish defendant's "specific intent" to further goals of the conspiracy); United States v. Batista, No. 06-CR-265 (DLI), 2009 WL 3134561, at *4 (E.D.N.Y. Sept. 23, 2009) (admitting evidence that defendant secretly put drugs in a woman's drink before having sex with her in prosecution for narcotics distribution conspiracy because it was background information and

7

probative of the defendant's motive of furthering charged drug distribution activities) (quoting United States v. MacPherson, 424 F.3d 183, 185 n.2 (2d Cir. 2005) (noting that although the government need not prove motive, a jury may weigh evidence of motive in considering whether "to infer guilty knowledge and intent")).  Likewise, here, evidence of the defendant's connection to the disappearance, murder, disposal and recovery of the Victim's body is probative of his intent to participate in and further the goals of the extortion conspiracy.

This evidence is relevant even though the conduct relating to the Victim's disappearance and murder occurred after the defendant and CC-1 obtained a portion of the money and property allegedly owed by the Victim.  The Second Circuit has repeatedly held that "[s]ubsequent acts are frequently probative as to intent."  United States v. Goffer, 721 F.3d 113, 124 (2d Cir. 2013); see also United States v. Kelley, 551 F.3d 171, 175-76 (2d Cir. 2009) (finding that fraudulent account statements sent by defendant to his clients two to four years after the related securities violations were relevant to defendant's intent at the time of the alleged violations); United States v. Germosen, 139 F.3d 120, 127-28 (2d Cir. 1998) (admitting evidence of a similar fraud scheme perpetrated shortly after the charged offenses as probative of the defendant's intent in conspiring to commit the charged offense, and noting that "[t]he fact that the evidence involved a subsequent rather than prior act is of no moment"); United States v. Blount, 229 F.2d 669 (2d Cir. 1956) (in prosecution for transmitting threat by telephone with intent to extort money, admitting testimony that defendant attempted to "blackmail" same victim two years later on the ground that it was a similar offense  and probative of the defendant's intent to extort money on prior occasion); United States v. Segui, No. 19-CR-188 (KAM), 2019 WL 8587291, at *10 (E.D.N.Y. Dec. 2, 2019) (noting that the Second Circuit has declined "to adopt a per se rule that subsequent . . . act evidence inherently lacks relevancy" because "[r]elevancy

8

cannot be reduced to [a] mere chronology" and admitting, in transmission of threats trial, evidence that the defendant, after transmitting the alleged threats, researched ways to kill the victim, purchased an axe and traveled to Michigan with the intent to kill the victim). For the same reasons as discussed in these cases, evidence relating to the defendant and CC-1's subsequent conduct surrounding the Victim's disappearance, murder and the disposal and recovery of his body is probative of the defendant's earlier intent to join and partake in the charged extortion conspiracy.

5. <u>Inextricably Intertwined Evidence of the Charged Extortion Conspiracy</u>

Evidence relating to the Victim's disappearance, murder, and the disposal and recovery of his body is also admissible because it is "inextricably intertwined with the evidence regarding the charged offense" and "necessary to complete the story of the crime on trial." <u>United States v. Carboni</u>, 204 F.3d 39, 44 (2d Cir. 2000). As set forth in the government's Opening Brief at 13-16 and for the reasons set forth above, the charged conspiracy cannot be intelligibly conveyed to the jury by selectively focusing on certain events and excising other related events from the record. First, the complete events of the charged conspiracy both predate and postdate the events of June 24-26, 2022. As set forth in the government's Opening Brief, the conspiracy begins with the defendant and CC-1 entering into a business agreement with the Victim and continues into the days after the Victim's disappearance. This period covers when the defendant and CC-1 surveilled the Victim, threatened the Victim, obtained money and property from the Victim, took possession of and relocated the Victim's Mercedes, disposed of the Victim's body and continued to attempt to obtain money from the Victim's family and friends after the Victim's disappearance. Not only is all of this conduct admissible as direct evidence for the reasons stated above, but excluding certain portions of this evidence relating to

9

the Victim's disappearance, murder and the disposal and recovery of his body would significantly confuse the jury.  If the jury is not permitted to hear evidence relating to the Victim's disappearance, it will be left wondering where the Victim is and why the Victim is not testifying.  Inviting the jury to wonder where the Victim is by excluding evidence relating to his disappearance will be particularly confusing in a case such as this, where the Victim's testimony (were the Victim alive) would be especially powerful in proving the elements of the charged offense.  If the jury is not permitted to hear evidence relating to the Victim's disappearance, it will inevitably wonder why the government is not eliciting what any reasonable juror would imagine to be critical evidence.  Such an outcome would unfairly permit the defendant to benefit from the fact that the Victim was murdered.  Similarly, if the jury is barred from hearing evidence relating to the Victim's disappearance, it will be entirely confused by the evidence of the defendant and CC-1's continued attempts to obtain money from the Victim's family and friends after the Victim's disappearance.  Simply put, it will be impossible for the government to "provide the jury with the complete story of the crimes charged" without being permitted to introduce evidence relating to the Victim's disappearance, murder and the disposal and recovery of his body.  United States v. Inserra, 34 F.3d 83, 89 (2d Cir. 1994).

6.  Evidence of Consciousness of Guilt and Thus Guilt Itself

Further, as set forth in the Opening Brief at 15-16, evidence of how the defendant and CC-1 disposed of the Victim's body, including using a car with no legal tie to them and disposing the body at a residence in upstate New York with little association to them, is also probative of their consciousness of guilt, and thus guilt, related to the charged conspiracy.  See United States v. Perez, 387 F.3d 201, 209 (2d Cir. 2004) ("Evidence of a party's consciousness of guilt may be relevant if reasonable inferences can be drawn from it and if the evidence is

10

probative of guilt.") (citations omitted); <u>see</u>, <u>e.g.</u>, <u>United States v. Mickens</u>, 926 F.2d 1323, 1329 (2d Cir. 1991) (upholding the admission of evidence of attempted witness or jury tampering as probative of a defendant's consciousness of guilt); <u>United States v. Kirk Tang Yuk</u>, 885 F.3d 57 (2d Cir. 2018) (upholding jury instruction that jury could, but was not required to, draw inference of defendant's consciousness of guilt if it credited government informant's testimony that defendant attempted to intimidate him); <u>United States v. Bein</u>, 728 F.2d 107, 114-15 (2d Cir. 1984) (holding that "[e]vidence of threats by a defendant against a potential witness against him can . . . be used to show guilty knowledge" if the evidence is more probative than prejudicial); <u>United States v. Mastropieri</u>, 685 F.2d 776, 790 (2d Cir. 1982) ("There can be no doubt that an attempt to suppress material records permits an inference of consciousness of guilt and therefore of guilt itself.").

### B.  Other Acts Evidence Under Federal Rule of Evidence 404(b)

As further stated in the Opening Brief at 16-18, evidence of the Victim's disappearance, murder, disposal and recovery of his body is also independently admissible under Federal Rule of Evidence 404(b)(2) as evidence of, among other things, the defendant and CC-1's planning and preparation, knowledge and intent, and absence of mistake or accident.  While the government submits that the Court need not reach Rule 404(b) because the evidence is admissible as direct evidence, should the Court hold otherwise, the evidence should be admitted under Rule 404(b) for the reasons stated above and in the Opening Brief—namely, that such evidence goes to intent and knowledge, among other topics.

### C.  Federal Rule of Evidence 403

Finally, despite the defendant's arguments to the contrary, evidence of the Victim's disappearance, murder, and disposal and recovery of his body—which is admissible for the reasons stated above—should not be precluded under Federal Rule of Evidence 403 because

its probative value is not substantially outweighed by a danger of unfair prejudice. As described above and in the government's Opening Brief, the probative value of the evidence relating to the Victim's disappearance, death, and disposal and recovery of his body is substantial. This evidence is probative of the relationship of trust between the defendant and CC-1 and existence of the conspiracy, of the defendant's knowledge and intent to participate in the conspiracy, of the fact that the defendant and CC-1 did, in fact, threaten the Victim and of the Victim's reasonable fear of the defendant's threats, and the defendant's and CC-1's consciousness of guilt. Further, it is highly probative because it is so inextricably intertwined with the events of the charged extortion conspiracy that to omit this evidence would confuse the jury and severely limit the government's ability to tell the jury what happened.

Evidence relating to the Victim's disappearance, murder and the disposal and recovery of his body is also not substantially more prejudicial than probative. The government does not intend to introduce details describing how the murder occurred, aside from establishing that the Victim was murdered via gunshot, the clothing the Victim was wearing when murdered and where and how the Victim's body was discovered. Courts have permitted the introduction of evidence of uncharged conduct that is more violent than the charged conduct in a variety of contexts, including in prosecutions for threats and obstruction and firearms possession, as detailed below, and narcotics conspiracies, as detailed above.

In United States v. Segui, a defendant was charged with transmitting threats of injury, in violation of 18 U.S.C. § 875(c), after sending a threatening email to a professor. No. 19-CR-188 (KAM), 2019 WL 8587291, at *13-14 (E.D.N.Y. Dec. 2, 2019). The defendant argued that evidence of his conduct after he sent the email, including "evidence that [he] planned to kill the professor, researched different ways of doing it and then purchased an axe, is infinitely

more disturbing than the charged conduct of sending an email threatening to injure or even kill him." Id. However, the Court held that the probative value of such evidence outweighed the danger of unfair prejudice or jury confusion because, in part, the searches of ways to kill the professor "b[ore] close parallels to the threats outlined in [the defendant's] [earlier] email [and] are particularly probative of [the defendant's] intent in sending that email and, therefore, should not be excluded under Rule 403." Id. The Court also held that the defendant's post-arrest statements to law enforcement that he was on his way to murder the professor and that he purchased an axe for that purpose was "highly probative" of his intent to convey a threat and outweighed potential prejudice, and was thus admissible, along with the physical axe. Id. The instant case is similar to Segui in several ways, including that there are parallels between the threat and the subsequent conduct. Specifically, the defendant and CC-1 threatened to kill the Victim if he did not pay and, after receiving only a portion of the alleged debt, they disposed of the Victim's remains in upstate New York. Like in Segui, the defendant's and CC-1's conduct subsequent to threatening the Victim is highly probative of their intent in making the original threats to the Victim.

Similarly, in United States v. Mundle, a defendant charged with transmitting a threat, in violation of 18 U.S.C. § 875(c), and using, carrying and possessing a firearm, in violation of 18 U.S.C. § 924(c), argued that admitting evidence of the circumstances in the days leading up to and after the threat, including showing up to his mother's house with a gun and threatening to kill her if she attempted to leave, "impermissibly put[] [him] on trial for kidnapping his mother—an uncharged crime." No. 15-CR-315 (NSR), 2016 WL 1071035, at *3 (S.D.N.Y. Mar. 17, 2016). Specifically, the court permitted evidence that, in the days prior to the threat, the defendant demanded money from his mother; showed his mother a gun kept in his

waistband; threatened to kill his mother or himself if she attempted to leave; threatened to kill his sister and mother's husband if she left; told his mother he had shot people in the past; punched a hole in the wall; and defaced his mother's home, which led to his sister calling him at which point the defendant threatened to kill his sister—the subject of the charge. After threatening his sister, the defendant continued to verbally assault and threaten his mother. The court rejected the defendant's argument that "such evidence [would] inflame the jury to such a degree as to pile on charges for which the Defendant was not indicted," and held that the evidence was highly relevant to the threats charge which required the jury to consider whether an ordinary recipient would interpret the communication as a threat. Id. The court also held that the evidence was more probative than prejudicial "[w]here, as here, the uncharged conduct is part-and-parcel of the charged conduct and exclusion of evidence concerning the uncharged conduct would create a conceptual void in the story of the crime." Id. (citation and internal quotation marks omitted). Here, as in Mundle, evidence of the Victim's disappearance, murder and disposal and recovery of his body is "part-and-parcel" of the charged conduct and highly relevant to understanding the threats made by the defendant in furtherance of the conspiracy, all of which the jury should be permitted to consider when determining, among other things, whether the defendant was a knowing participant in the conspiracy and took affirmative steps to further its objectives.

Just as the government needed to establish the defendant's intent in conveying the threats in Segui and Mundle, here, the government must establish the defendant's intent to join and take steps to further the goals of the charged conspiracy, which included using force or threats to extort the Victim. The defendant's conduct related to the disappearance, murder and disposal of the Victim's body is thus highly probative of the defendant's intent when he threatened the Victim.

14

Courts also routinely admit both intrinsic and extrinsic evidence of violent conduct, including murder and attempted murder, in prosecutions for illegal firearms possession despite the risk of prejudicing the defendant given the probative value of such evidence.  See, e.g., United States v. Gonzalez, 110 F.3d 936, 941-42 (2d Cir. 1997) (in prosecution of defendants charged with being felons in possession of firearms, affirming evidence of attempted burglary that occurred immediately prior to the defendants' alleged possession of the firearms as relevant to possible motive for possessing the firearms and "to provide crucial background evidence that gave coherence to the basic sequence of events that occurred on the night" of the incident); United States v. Jackson, 47 F. App'x 36, 38-39 (2d Cir. 2002) (where defendant was charged with being a felon in possession of a firearm, district court did not abuse its discretion in admitting evidence of a redacted version of a "wanted" flyer to establish that the defendant was wanted in connection with a shooting, thus providing the jury with an explanation as to why the officers had initially approached him"); United States v. Barlow, No. 09-CR-580 (JFB), 2010 WL 4878961, at *1 (E.D.N.Y. Nov. 23, 2010), aff'd, 479 F. App'x 372 (2d Cir. 2012) (in prosecution of defendant charged with being a felon in possession of ammunition, admitting evidence regarding the defendant's participation in an attempted burglary at the time he was found in possession of a loaded firearm given that the burglary explained why the defendant had the firearm on the date in question and was necessary to complete the story at trial); United States v. Fortenberry, 971 F.2d 717, 721-22 (11th Cir. 1992) (in prosecution for illegal possession of a firearm, admitting evidence of defendant's participation in a double murder because it was "an essential part of the chain of events explaining the context, motive, and set-up of the possession charge and was necessary to complete the story of the crime for the jury"); United States v. Cenephat, 115 F.4th 1359 (11th Cir. 2024) (in prosecution of defendant charged

with being a felon in possession of a firearm, affirming admission of evidence that defendant committed a drive-by shooting shortly before his arrest where shooting "could be presented as part of the prosecution's story of how Cenephat unlawfully possessed firearms" and acknowledging that courts "have routinely permitted intrinsic evidence of similarly violent acts in other prosecutions for illegal firearm possession"); United States v. Mathis, 778 F. App'x 816 (11th Cir. 2019) (in prosecution of defendant charged with being a felon in possession of ammunition, affirming admission of evidence of uncharged murder that was "inextricably intertwined with charged" firearm possession and was "necessary to tell story of the charged offenses" since, among other things, the casings were found at the murder scene); United States v. Lee, 612 F.3d 170, 185-87 (3d Cir. 2010) (in prosecution of defendant charged with being a felon in possession of a firearm, affirming the admission of the defendant's statements admitting prior possession of a firearm and that he shot at another individual with whom he had an ongoing feud as probative of motive and reason for the defendant to have a gun); see also United States v. Thristino, 47 F. App'x 7, 9 (2d Cir. 2002) (where defendant was charged with being a felon in possession of ammunition, "evidence of drug-dealing in [defendant's] apartment was . . . relevant to show his motive for possessing ammunition as a 'tool' of the drug trade" and the evidence "was needed to explain the relationships among the individuals involved and the facts precipitating the arrest").

Courts also permit evidence of violent conduct, including murder, in racketeering cases as proof of the enterprise even where the charged predicate offenses do not include murder. See, e.g., United States v. Matera, 489 F.3d 115, 121 (2d Cir. 2007) (affirming admission of evidence of uncharged murders because it was probative of the existence of a criminal enterprise in a RICO case where the underlying predicate acts only included a murder conspiracy and not a

16

completed murder); United States v. Miller, 116 F.3d 641, 682 (2d Cir. 1997) (in prosecution for racketeering and narcotics trafficking, affirming the admission of evidence of numerous uncharged murders because the uncharged conduct was "proof of the existence of the RICO enterprise . . . which used such acts of violence in furtherance of its narcotics conspiracy"); United States v. Castro, 411 F. App'x 415, 420 (2d Cir. 2011) (in prosecution for assault with a dangerous weapon in aid of racketeering (and conspiracy) and Section 924(c), admitting evidence of multiple uncharged murders to prove the existence of the enterprise); United States v. Chin, 83 F.3d 83 (4th Cir. 1996) (in prosecution for drug trafficking, Section 924(c) and engaging in a continuing criminal enterprise, admitting defendant's statements about how much he would charge for a murder-for-hire, "his people's" responsibility for a particular murder, and where the dead body was disposed of); see id. ("Prior testimony regarding [the defendant's] threat to kill the shop owner bolstered the relevance of murder and murder threats to [the defendant's] heroin business.").

For the reasons stated above, evidence of the Victim's disappearance, murder and the disposal and recovery of his body is more probative than prejudicial and should be admitted at trial.

II.    The Defendant's Remaining Arguments Are Meritless

The defendant's remaining motions are meritless and should be denied.

First, as to the defendant's reservation of rights to challenge the introduction of evidence from the defendant's cell phone, the government does not intend to introduce evidence from the defendant's cell phone given the Court's oral ruling suppressing the phone. However, the defendant's suggestion that cell site data for the defendant should be suppressed is baseless since that data was received from a telephone provider pursuant to a judicially-authorized search warrant obtained months before the government seized the defendant's phone and thus did not rely on any information obtained from the defendant's phone or that was the subject of the suppression

17

hearing.  Similarly, although the government will not seek to introduce messages obtained from the defendant's phone, messages from the defendant that were obtained through independent means, such as through a search of CC-1's phone that was obtained by law enforcement months before the government seized the defendant's phone, are admissible since they were not the subject of the suppression hearing or a fruit of the suppressed evidence.

Second, the defendant's motion to preclude statements of CC-1 should be denied since such statements were made against his penal interest and in furtherance of the conspiracy. As stated in the government's Opening Brief, the government intends to admit evidence of statements and text messages made by CC-1 to others prior to the Victim's disappearance; statements made to the Victim, including threats, and others on June 25-26, 2022; and statements made to others after the Victim's disappearance.  See Gov. Mot. at 28-29.  These statements are admissible as statements against penal interest, see Fed. R. Evid. 804(a)(5)(B), and co-conspirator statements made in furtherance of the conspiracy, see Fed. R. Evid. 801(d)(2)(E). See Gov. Mot. 21-30.  The government intends to prove the existence of a conspiracy between the defendant and CC-1.  These statements should be admitted for the reasons stated in the government's Opening Brief at 27-30.

CONCLUSION

For the foregoing reasons, the Court should deny the defendant's motions <u>in limine</u> in their entirety.

Dated:      Brooklyn, New York
            September 12, 2025

                                        Respectfully submitted,

                                        JOSEPH NOCELLA, JR.
                                        UNITED STATES ATTORNEY
                                        Eastern District of New York
                                        271 Cadman Plaza East
                                        Brooklyn, New York 11201


                          By:    /s/ Megan Larkin
                                 Megan Larkin
                                 Benjamin Weintraub
                                 Assistant U.S. Attorneys
                                 (718) 254-6248