# Michael L. Soshnick
*Attorney at Law*
170 Old Country Road
Suite 307
Mineola, New York 11501

Michael L. Soshnick
───────────
Of Counsel
John Lawrence
Eric P. DeBarba

Tel: (516) 294-1111
Fax: (516) 294-5465
msoshnick@soshnicklaw.com

September 12, 2025

Via ECF and Email

The Honorable Dora L. Irizzary
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 11201

   Re: **United States of America v. Shlomo Patchiav**
      **Crim. Dkt. No.: 1:23-cr-00099-(DLI)**

Dear Judge Irizzary:

  I am the attorney for the Defendant Shlomo Patchiav, in the above-referenced case and I am writing in opposition to the Government's <u>motion in limine</u> in connection with the upcoming trial of my client. The Defendant opposes the Government's attempt to deny him a fair trial by allowing the trier of fact to review evidence wherein the probative value is substantially outweighed by its prejudicial effect. The Defendant reaffirms the arguments put forth in the original motion in limine filed on August 8, 2025.

## I. BACKGROUND FACTS

  Once again, it must be reiterated that Mr. Patchiav maintains his innocence in this case and that fact has been repeatedly communicated to the Government. The perpetrator of the extortion and the murder is Sanat Djumayev who but for the actions of the Federal Bureau of Investigation might still be within the Court's jurisdiction, but unfortunately he was allowed to flee to Uzbekistan.

  Despite the clear and unequivocal facts in this case demonstrating that Djumayev and other unidentified persons committed the instant crimes, the Government's only focus is on the prosecution of Mr. Patchiav. Despite its failure to prevent the likely murderer from escaping justice, the Government now seeks to use the abhorrent conduct of Djumaev, including the extortion of money/property from the victim; murder of the victim by shooting him in the head;

purchasing a Chevy Malibu in Pennsylvania to transport the body to Ellenville, New York; stuffing the victim's corpse into bags Djumayev purchased; dumping the body on the property, and then fled the United States carrying a large amount of cash which was seized by United States Customs and the FBI who permitted Djumaev to leave the United States. These facts demonstrate that Djuamayey acted alone or with the assistance of other unidentified co-conspirators not with Mr. Patchiav.

## II. **LEGAL ARGUMENT**

"The purpose of a motion in limine is to allow the trial court to rule in advance of trial on the admissibility and relevance of certain forecasted evidence." *Boateng v. Bayerische Motoren Werke Aktiengesellschaft,* 2024 U.S. Dist. LEXIS 63963, *4-5 (E.D.N.Y. 2024) *quoting Hopkins v. AMTRAK*, No. 08-CV-2965 (NGG) (RML), 2016 U.S. Dist. LEXIS 57236, 2016 WL 8711718, at *2 (E.D.N.Y. Apr. 29, 2016); *see also Luce v. United States*, 469 U.S. 38, 40 n.2, 105 S. Ct. 460, 83 L. Ed. 2d 443 (1984) (defining such motions as "any motion, whether made before or during trial, to exclude anticipated prejudicial evidence before the evidence is actually offered"). "Evidence should be excluded on a motion in limine only when the evidence is clearly inadmissible on all [*5] potential grounds." *United States v. Paredes*, 176 F. Supp. 2d 179, 181 (S.D.N.Y. 2001). "[C]ourts considering a motion in limine may reserve decision until trial, so that the motion is placed in the appropriate factual context." *Jean-Laurent v. Hennessy*, 840 F. Supp. 2d 529, 536 (E.D.N.Y. 2011) (citation omitted). Further, a district court's ruling on a motion in limine is preliminary and "subject to change when the case unfolds." *Luce*, 469 U.S. at 41.

In the present case, the Defendant seeks to preclude or severely limit any introduction of the words and actions of Djumayev for use against Mr. Patchiav because the Government has not demonstrated via legally sufficient proof any joint agreement establishing the existence of a conspiracy. Moreover, the Government has indicated a desire to admit statements between and among, Defendant, Djumayev, the victim and possibly third parties about whom the Government only gained information due to its seizure of the Defendant's cell phone which this Honorable Court stated on the record shall be suppressed and for which a written decision is pending. Finally, the Defendant seeks to suppress the highly prejudicial photos of the victim's decomposed body as they are shocking, disturbing and are just a blatant attempt to make an extortion conspiracy case into a murder prosecution.

## III. THE GOVERNMENT MUST PROVE THE DEFENDANT KNEW OF THE SCHEME TO EXTORT THE VICTIM AND KNOWINGLY JOINED AND PARTICIPATED IN IT

"To be guilty of conspiracy, there must be some evidence from which it can reasonably be inferred that the person charged with conspiracy knew of the existence of the scheme alleged in the indictment and knowingly joined and participated in it." *United States v. Snow*, 462 F.3d 55, 68 (2d Cir. 2006) (internal quotation marks omitted), *cert. denied*, 549 U.S. 1150, 127 S. Ct. 1022, 166 L. Ed. 2d 770 (2007). "An individual defendant's membership in a conspiracy may not be established simply by his presence at the scene of a crime, nor by the fact he knows that a crime is being committed." *United States v. Desimone*, 119 F.3d 217, 223 (2d Cir. 1997), *cert.*

denied, 525 U.S. 874, 119 S. Ct. 174, 142 L. Ed. 2d 142 (1998). Nor is a defendant's "mere association with those implicated in an unlawful undertaking [sufficient] to prove knowing involvement." *United States v. Nusraty*, 867 F.2d 759, 764 (2d Cir. 1989). "Evidence tending to show knowing participation in the conspiracy is also needed, i.e., facts sufficient to draw a logical and convincing connection between circumstantial evidence of an agreement, and the inference that an agreement was in fact made." *United States v. Jones*, 393 F.3d 107, 111 (2d Cir. 2004) (citation and internal quotation marks omitted); *see also Desimone*, 119 F.3d at 223 ("[M]embership requires proof of purposeful behavior aimed at furthering the [**12] goals of the conspiracy.") *United States v. Hawkins*, 547 F.3d 66, 71 (2d Cir. 2008).

"The crux of a conspiracy is an agreement between two or more persons to join together to accomplish something illegal." *United States v. Parker*, 554 F.3d 230, 234 (2d Cir. 2009) ("To prove a conspiracy, the evidence must show that 'two or more persons agreed to participate in a joint venture intended to commit an unlawful act.'" (*quoting United States v. Desimone*, 119 F.3d 217, 223 (2d Cir. 1997))). *United States v. Lyle*, 856 F.3d 191, 207 (2d Cir. 2017).

Here, the Government's evidence against the Defendant amounts to the fact that Mr. Patchiav had a passing acquaintance with Djumayev and the victim in regard to potential watch deals that never materialized. Despite the Government's allegations of a $500,000 figure, there is no showing of any watches being owned or purchased by the Defendant. There is also no evidence that the Defendant intended to purchase said watches on credit or was in any way obligated to purchase said watches from a third party. The existence of the entire watch scheme which from the time of the arrest/ indictment has been the lynchpin of the extortion conspiracy, is a story that Djumayev told Agent Concannon while he was in the process of fleeing the jurisdiction. There is no independent corroboration beyond statements made by Djumayev to law enforcement as well as by Djumayev to the victim's family. The entire basis for the alleged extortion scheme emerges from Djumayev, who is highly motivated to lie to cover up the fact that he is a thief, an extortionist and a murderer. The only other real connection the Government provides between the two (2) is that Mr. Patchiav loaned Djumayev his brother's Jeep Grand Cherokee on the night of June 24, 2022. On June 25, 2022 Djumayev used the Defendant's brother's vehicle without permission or consent of either the Defendant or his brother to engage in extortion and murder. In truth and in fact, the Defendant who is an Orthodox Jew was in Synagogue for most of the day and did not participate in Djumayev's criminal scheme. On June 26, 2022 the Defendant drove Djumayev to Ellenville New York. On that occasion it way Djumayev who dumped the body of the victim without the Defendant's knowledge or participation. As such, any evidence or testimony regarding Djuamayev's conduct, including his taking funds from the victim at the TD Bank in Brooklyn; signing over the Mercedes before a notary public; the disappearance of the victim and the coverup of the alleged crime should be precluded unless and until the existence of the conspiracy has been established showing the Defendant and Djumayev actually agreed to extort the victim. *United States v. Kirsch*, 903 F.3d 213, 229 (2d Cir. 2018) ("To establish the existence of a criminal conspiracy, the government must prove that the conspirators agreed on the essence of the underlying illegal objective[s], and the kind of criminal conduct . . . in fact contemplated.").

The Government must also prove that the Defendant joined the agreement with the

necessary criminal intent. *See United States v. Villegas*, 899 F.2d 1324, 1338 (2d Cir. 1990) ("In order to prove a conspiracy, the government must present 'some evidence from which it can reasonably be inferred that the person charged with conspiracy knew of the existence of the scheme alleged in the indictment and knowingly joined and participated in it.'" *United States v. Kenner*, 272 F. Supp. 3d 342, 391 (E.D.N.Y. 2017) quoting *United States v. Sanchez Solis*, 882 F.2d 693, 696 (2d Cir. 1989))). "Both the existence of a conspiracy and a given defendant's participation in it with the requisite knowledge and criminal intent may be established through circumstantial evidence." *Torres*, 604 F.3d at 66 (alteration omitted). The Second Circuit has explained the:

> "A defendant's knowing and willing participation in a conspiracy may be inferred from . . her presence at critical stages of the conspiracy that could not be explained by happenstance, or a lack of surprise when discussing the conspiracy with others. It may also be established by evidence that the defendant participated in conversations directly related to the substance of the conspiracy[,] possessed items important to the conspiracy, or engaged in acts exhibiting a consciousness of guilt, such as [making] false exculpatory statements. *In re Terrorist Bombings of U.S. Embassies in E. Africa*, 552 F.3d 93, 113 (2d Cir. 2008).

The Defendant's knowing and willing participation in the conspiracy must be established by the Government. As such, the Court must direct that the Government set forth its evidentiary proof before allowing any testimony about the conduct and statements of Djumayev as well as the introduction of any testimony about the disappearance and/or murder of the victim.

### IV. **EVIDENCE OF DJUMAYEV'S CONDUCT IS NOT PROBATIVE OR RELEVANT UNTIL THE CONSPIRACY IS PROVEN**

The Second Circuit Court of Appeals approach on Rule 404(b) evidence is "inclusionary" however, "evidence of crimes, wrongs, and bad acts may be received for any purpose other than to show a defendant's criminal propensity, **as long as the evidence is relevant and satisfies the probative-prejudice balancing test of Rule 403**." *United States v. Robinson* 17-CR-249 (PAE) (S.D.N.Y. Oct. 5, 2017) *citing United States v. Carboni*, 204 F.3d 39, 44 (2d Cir. 2000). "The rule does not bar admission if the evidence is used "for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake or lack of accident." *quoting* Fed. R. Evid. 404(b)(2). *United States v. Dupree*, 870 F.3d 62, 76 (2d Cir. 2017) "Evidence offered for a permissible purpose, however, is nevertheless inadmissible "if the other act or acts are not sufficiently similar to the conduct at issue". *United States v. Gordon*, 987 F.2d 902, 909 (2d Cir. 1993) quoting *United Staes v. Afjehi*, 869 F.2d 670, 674 (2d. Cir. 1989). The Second Circuit Court of Appeals has held the standard for admitting prior act evidence is:

> "(1) the prior act evidence was offered for a proper purpose; (2) the evidence was relevant to a disputed issue; (3) the probative value of the prior act evidence substantially outweighed the danger of its unfair prejudice; and (4) the court administered an appropriate limiting instruction." *United States v. Dupree*, 870 F.3d 62, 76 (2d Cir. 2017) *quoting Garcia*, 291 F.3d at 136.

4

The Government has made clear that its intent is to introduce:

> "[e]vidence of the Victim's disappearance, murder and the recovery of his body....as evidence of, among other things, the defendant and CC-1's planning and preparation, knowledge and intent, and absence of mistake or accident." See Doc. 96 Pg. 28.

The Government must once again be precluded from the introduction of the evidence of the criminal actions of Djumayev which have been referenced *supra* without demonstrating that the Defendant was engaged in an extortion conspiracy with him. To do otherwise would be far more prejudicial than probative because it would allow the jury to hear about the appalling actions of a thief, extortionist and murderer in relation to the Defendant without clearly demonstrating a culpable co-conspiratorial role of Mr. Patchiav.

### V. ADMISSION OF EVIDENCE OF DJUMAYEV'S CONDUCT IS HIGHLY PREJUDICIAL WITHOUT DEMONSTRATIVE EVIDENCE OF MR. PATCHIAV KNOWINGLY AND INTENTIONALLY JOINING A CONSPIRACY

"Rule 403 provides that a court may exclude relevant evidence "if its probative value is substantially outweighed by a danger of . . . unfair prejudice." **Evidence is unfairly prejudicial within the meaning of Rule 403 "only when it tends to have some adverse effect upon a defendant beyond tending [*5] to prove the fact or issue that justified its admission into evidence."** *United States v. Kadir*, 718 F.3d 115, 122 (2d Cir. 2013). We "accord great deference to the district court's assessment of the relevancy and unfair prejudice of proffered evidence." *United States v. Morgan*, 786 F.3d 227, 229 (2d Cir. 2015). Accordingly, when evaluating a district court's decision to admit evidence under Rule 403, we "generally maximize its probative value and minimize its prejudicial effect." *United States v. Iotova*, 2024 U.S. App. LEXIS 32449, *4-5 (2d Cir. 2024) *quoting United States v. Coppola*, 671 F.3d 220, 245 (2d Cir. 2012). In the present case, if the Defendant were held to be responsible for Djumayev's horrific conduct without a clear and unequivocal demonstration that he is a co-conspirator it would be unfairly prejudicial. The Defendant would be forced to defend himself against theft/extortion that took place without his knowledge during a time he was engaged in a religious observance, a murder he was unaware ever took place and a coverup for which he was at best an unwitting bystander by virtue of being paid to drive Djumayev to Ellenville. This will put him at an extreme disadvantage, and therefore the Court must prevent such evidence from being introduced against Mr. Patchiav.

### VI. GRUESOME AND GRAPHIC AUTOPSY PHOTOGRAPHS OF THE VICTIM MUST BE PRECLUDED AS THEY ARE UNDULY PREJUDICIAL

The Government has indicated a desire to introduce into evidence the gruesome and graphic photographs of the victim who was likely murdered by Djumayev in this case. The graphic photographs of the autopsy show not only how the victim died but also the state of decomposition of his body when it was discovered in February, 2023. Given that this is an

extortion conspiracy case not a murder prosecution this will only serve to upset, disturb and ultimately prejudice the fact finder against the Defendant and should be precluded.

"[T]he Second Circuit has made clear that the graphic or disturbing nature of a photograph alone is not enough to render it inadmissible." *United States v. Salim,* 189 F. Supp. 2d 93, 98 (S.D.N.Y. 2002) (*citing United States v. Velazquez*, 246 F.3d 204, 210-11 (2d Cir. 2001)). Evidence that may upset or disturb a jury is not thereby inadmissible, *United States v. Salameh*, 152 F.3d 88, 123 (2d Cir. 1998), "if the probative value of that evidence is not substantially outweighed by the evidence's negative qualities. Each piece of proposed evidence must be evaluated to determine how it will aid the jury's ability to find the facts on which the case turns. *Jaquez v. Flores (In re Estate of Jaquez)*, 2016 U.S. Dist. LEXIS 34517, *20-21 (S.D.N.Y. 2016). Here, he grisly photographs of the victim's decomposed body should not be admitted. The introduction of such evidence would merely serve the ends of the Government in attempting to make this into a murder prosecution via the backdoor. Accordingly, the photographs of the victim's decomposed body must be precluded from being introduced into evidence at trial.

### VII. THE DEFENDANT OBJECTS TO THE ADMISSION OF STATEMENTS BY DJUMAYEV AND THE VICTIM UNDER THE HEARSAY EXCEPTIONS

"A statement . . . is not hearsay if . . . [t]he statement is offered against an opposing party and . . . was made by the party's coconspirator during and in furtherance of the conspiracy." Fed. R. Ev. 801(d)(2)(E). "**To admit an out-of-court declaration under this rule, the district court must find by a preponderance of the evidence '(a) that there was a conspiracy, (b) that its members included the declarant and the party against whom the statement is offered, and (c) that the statement was made during the course of and in furtherance of the conspiracy.**'" *United States v. Farhane*, 634 F.3d 127, 161 (2d Cir. 2011) *(quoting United States v. Al-Moayad*, 545 F.3d 139, 173 (2d Cir. 2008)). "These three factual predicates must be determined by the district court by "a preponderance of the evidence." *In re Terrorist Bombings of U.S. Embassies in E. Africa*, 552 F.3d 93, 137 (2d Cir. 2008) (citing Fed. R. Ev. 104(a)). See also *United States v. Mallay*, 712 F.3d 79,105 (2nd Cir. 2013). Under these facts where the evidence of conspiracy is so scant that the Court must carefully assess any statements by Djumayev that the Government seeks to proffer against the Defendant.

The Court must also preclude the admission of the hearsay statements of the victim because the Govnernment has not demonstrated by a preponderance that the Defendant procured his unavailability to testify. "…the district court may admit hearsay evidence as to statements by an unavailable declarant if it finds by a preponderance of the evidence, see Fed. R. Evid. 804 Advisory Committee Note (1997); Fed. R. Evid. 104(a), that (a) the "party against whom the out-of-court statement is offered[] was involved in, or responsible for, procuring the unavailability of the declarant through knowledge, complicity, planning or in any other way," and (b) that party "acted with the intent of [*671] procuring the declarant's unavailability as an actual or potential witness," *United States v. Stewart*, 485 F.3d 666, 670-671 (2d Cir. 2007)*quoting Dhinsa*, 243 F.3d at 653-54. The Government's inability to establish the existence of the conspiracy must preclude the admission into evidence of the hearsay testimony as it cannot be shown that Mr. Patchiav was in any way responsible for the victim's murder which resulted in his unavailability.

6

### DEFENDANT RESERVES HIS RIGHT TO PROCEED WITH HIS DEFENSE INCLUDING PUTTING ON CHARACTER WITNESSES AND ALIBI WITNESSES

"The admissibility of character evidence rests in the sound discretion of the trial judge, and we will not disturb the trial court's ruling absent an abuse of discretion. *United States v. Paccione*, 949 F.2d 1183, 1201 (2d Cir. 1991) *citing United States v. Davis*, 546 F.2d 583, 592 (5th Cir.) ("Rarely and only upon a clear showing of prejudicial abuse of discretion will appellate [**55] courts disturb the rulings of trial courts in the admissibility of character evidence."), *cert. denied*, 431 U.S. 906, 52 L. Ed. 2d 391, 97 S. Ct. 1701 (1977). It is within the court's discretion to exclude evidence that is prejudicial, as well as "evidence of specific acts intended to demonstrate character traits not at issue." *United States v. Wilson*, 750 F.2d 7, 9 (2d Cir. 1984), *cert. denied,* 479 U.S. 839, 93 L. Ed. 2d 85, 107 S. Ct. 143 (1986).
*United States v. Paccione*, 949 F.2d 1183, 1201 (2d Cir. 1991) . The Defendant will determine at the appropriate time how to proceed with his case and reserves the right to call witnesses and introduce his defense as he sees fit subject only to the evidentiary rulings of this Honorable Court.

VIII.   **CONCLUSION**

WHEREFORE, for the foregoing reasons, the Defendant respectfully requests that the Court Deny the Government's motion in limine and grant the Defendant's motion in limine

Respectfully submitted,

Michael L. Soshnick, Esq.
Attorney for Defendant

7